Good morning, everyone. First matter is Commonwealth versus Navient. Mr. Chomsky. Good morning, Your Honors, and may it please the Court if I could reserve three minutes for rebuttal. Okay. 20 U.S.C. Section 1098G unqualifiedly preempts the application of, quote, any disclosure requirements of any state law to student loans that are issued under the Higher Education Act. The key word there is disclosure, right? As opposed to what if there's an affirmative misrepresentation that doesn't preempt that, does it? Well, we agree, Your Honor, that there is a distinction between disclosure requirements and affirmative misstatements or misrepresentations. But I think the central problem in this case, Your Honor, is that Judge Mariani failed to recognize even that decision. If you look at Judge Mariani's opinion, he concluded that Section 1098G reaches only disclosures that are made on standardized forms, billing statements, and coupon forms. How would that bother us? We can affirm for any reason on the record. And if we find that there's a sufficient pleading, at least here, of not just failure to disclose but affirmative acts of misleading, you can say, well, that's really disclosure because you didn't really disclose the accurate situation. We can affirm on that basis, couldn't we? Of course, Judge McKee, you can affirm on any basis that's supported by the record. We respectfully submit that the record would not support affirmance on that ground, that many of the allegations in the Commonwealth's complaint are pure nondisclosure claims. And I can identify a couple of those for you that I think are very clear and beyond dispute. Paragraph 177B of the complaint, for instance, expressly alleges that in phone calls, Navient failed to sufficiently disclose the availability of IDR options. It uses the terms failed to disclose. But doesn't all that really get you as possibly a remand with an instruction to the district court to determine in the first instance which are disclosures and which are a bit of misrepresentations? Of course, Your Honor. And I think we would be happy with a remand on that ground directing Judge Mariani to do that. We also think that it would serve the courts well, litigants well, and the parties to this case well, if this court were to put some flesh on the bones and explain to Judge Mariani how to draw that distinction. Tell us, how do we draw the distinction where the allegation is steering people basically into situations where they're not made aware of the IDR provisions, they're not made aware of the full impact of forbearance under the loans? How do we make that provision and distinguish that simply from disclosure? I want to answer both parts of that question, if I could, Judge McKee. The first is just to say there is no allegation in this case that borrowers were not adequately informed about the consequences of a forbearance. The allegations in this case are not... Including the continuing interest, the interest continuing to grow. There is no claim that borrowers were not informed about interest capitalization. The allegations in this complaint relate not so much to the terms or conditions that are associated with forbearance, but instead challenge Navient's failure to disclose IDR, and then only at the time of live contact with borrowers. Because there's no dispute in this case that borrowers who took out loans, federal HEA loans that are serviced by Navient, repeatedly were told in writing about the availability of IDR. As a matter of federal law, they were told at the time they took out the loans. They were told before they entered repayment. There's a federal regulation and no allegation that Navient violated it that requires information about income-driven repayment options to be disclosed on every single bill or statement that a borrower received. There's one additional federal regulation that I want to highlight for you, which is that following a call with a borrower who expresses an inability to repay, Navient is obligated to send a written notice to the borrower, not only discussing the terms of any forbearance that were offered, but also alerting that borrower to the terms of an IDR plan, as well as to the fact that borrowers are allowed to change which repayment option they select at any time. So there is no dispute in this case that the borrowers whose loans Navient services were informed repeatedly at least four times, but in some cases hundreds of times, right, because it has to be included on every single bill or statement about the availability of IDR. And so the dispute that the Commonwealth of Pennsylvania has is not so much with Navient, but instead with the Department of Education, which has chosen to require disclosures through written communications and not through oral communication. What for you would be the significant distinction between disclosures and affirmative misrepresentations? Sure. Our position is straightforward and simple. It is if something was said to a borrower that is false, that is actually incorrect, then that statement escapes the preemptive bar of Section 1098G. That is fairly narrow. I mean, you could say also if something isn't told to a borrower that should have been told or some possible advice that would get you into one program and not another. The point being that I see what you're saying. If it's a representation, if it's a disclosure that wasn't made, that's one thing. But if it's a the use of a disclosure to get somebody into a program by misleading them, that could be an affirmative misrepresentation, could it not? I don't think so, Your Honor, although I think there are circumstances to be sure in which the nondisclosure of information can be said can be considered to be fraudulent. But what about those circumstances? You know, if there is a material omission, a nondisclosure, is it your position that 1098G preempts state law claims that are premised on a material omission? Well, I think our position is that at the point in which state law would enforce a duty to disclose, then that constitutes a state law disclosure requirement. No, let me press you. Material omission, does it prevent material omissions? State law claims premised on material omission, not duty to disclose, not statutory duty to disclose, but some other theory because material omission can be amorphous in fraud space because it depends on what was presented, what was not presented, what was here, what was left out. Answer the question, please, in the context of material omission. And let me give you, I think, an example that we would concede is a claim that wouldn't be preempted. case from the Southern District of New York where a borrower called Sally May expressed concern about the transfer of his loan and was told by Sally May that he would be enrolled in ACH auto debit, that he would not become delinquent or go into default. And in fact, he wasn't enrolled in ACH. He did become delinquent and ultimately default. That is a false statement that is made to a borrower. But in the typical circumstance, when a borrower calls up Navient and says, I'm having trouble making my payment this month, is there something that you can do for me? And Navient says, I can offer you a forbearance. And the terms of that forbearance are disclosed in accordance with federal law. That is a truthful statement. And any state law that would require Navient at that point in time to disclose the availability of IDR when federal law doesn't except in that written notice that goes to borrowers afterwards, in our view, is a preempted nondisclosure requirement. So does that mean that what you're saying is that federal law means that states have no claim or there's no state law claim for material omission that servicers would ever make to anyone? That's just outside the realm of what state law can reach. That's just supremacy clause. That's just preemption doctrine. No material omission claims are allowed. Well, I want to say it's more than just the supremacy clause and preemption doctrine. Right. It's, in our view, the plain language of Section 1098G, which preempts any disclosure requirements of any state law. And we think that that manifests a breadth to broadly and without limitation preempt state laws. But I do want to say one other thing, Your Honor, and emphasize this, which is there may be some close questions in policing the line between affirmative misrepresentations and omissions or nondisclosures. But I don't want the existence of some tough questions that, to Judge McKee's point, Judge Mariani might be in a position to sort out on remand, obscure the fact that there are some truly easy questions that are presented by the complaint. In this case, I gave you one example earlier of Paragraph 177B. Two additional examples are Paragraphs 184B and C. Those two provisions of the complaint expressly fault Navient, on the one hand, for not disclosing additional consequences to borrowers from failing to recertify beyond their loss of eligibility for participation in IDR. That is a pure nondisclosure requirement. The claim there is that Pennsylvania's CPL obligated Navient not to only disclose that one consequence of failing to recertify, but a litany of additional consequences. It's a pure nondisclosure claim. Another example of this, the following paragraph of the complaint, which faults the sufficiency of Navient's email subject lines, which said to borrowers, important information about your account, and provided instructions and a request that the borrower log into the website to view this important information, but says more was supposed to be communicated to borrowers. It's a pure nondisclosure claim. So, not to get into every paragraph of the complaint, but you've identified three paragraphs and then subparagraphs within those. If we put those to the side, my understanding from your example is that the rest of the complaint still focuses on items that aren't preempted. Because these examples might be, you know, the high watermark of where it could be a preempted disclosure, but even the paragraph numbers that you're citing indicate that there's a lot to this complaint. And so, what about the remainder of the complaint? Well, we don't necessarily, and I don't want you to misunderstand my identifying those three examples as being exclusive. We continue to maintain that, for instance, the website claims or the website-based claims that the state is bringing in this case remain preempted, both expressly and also impliedly. But again, I think those present a closer question than the examples that I gave you, and I think we'd be happy to, I see my red light is on. I'm happy to talk more about this with you or take it up with Judge Mariani or in rebuttal. One quick question on the, actually two questions, still on the subject of preemption. What's wrong with the Seventh Circuit case in Nelson? It seems that it drew a pretty good line between misrepresentations and disclosures. I think in general, we're actually comfortable with the line that the Nelson court drew. I think we do take issue to some extent with the Nelson court's decision that the website claims in that case could go forward. I just want to say the website claims at issue in Nelson are meaningfully and materially distinguishable than the website claims in this case in at least two respects. The first respect in which they're distinguishable is in that case, the servicer at issue, Great Lakes, told borrowers, rely on us. Don't go consult an expert. Come to us and we will work with you. That is not what the website allegations in this case say, and it's not what Navient's website said. All Navient's website said is, if you're having trouble making repayment, please call us. We can help you by identifying options. So I would take the position, and we can take this up with Judge Mariani on remand, that Navient did not assume any sort of a duty in making those statements the way that Great Lakes did in the Nelson case, and that the Seventh Circuit found persuasive. The second thing that I would say about that, if I could, Your Honor, is we do disagree with Nelson to the extent that it found that a self-imposed duty escapes the preemptive bar in Section 1098G. Our position on that is fairly straightforward. It doesn't matter whether or not somebody voluntarily undertook a duty or not. What matters is whether that duty is being enforced by state law. And we think that that position is fully consistent with a line of Supreme Court cases that begins with Cipollone, extends through Wolins, and comes to the present. And I'll just say very briefly on that. It's because the language of 1098G is quite different from the express preemption clauses where the court has found that voluntarily assumed duties are not preempted. So, for instance, in the Cipollone case, the express preemption clause there read very differently than the express preemption clause here. But even this express preemption clause doesn't preempt affirmative misrepresentation claims, right? That is correct, Your Honor. Again, it's based on omissions or nondisclosures. But the key difference, if I could, is that, for instance, the preemption clause in the Cigarette Labeling Act that was at issue in Cipollone referred to requirements imposed under state law. And the plurality of the Supreme Court in the Cipollone opinion said that requires a specific positive law enactment by a legislature or a tort claim that was specifically imposed by state law with respect to the subject matter of the claims there, which is the health and safety of smoking. The Bates case, which is cited by the Commonwealth in its brief, also is different. That claim referred to state law requirements for labeling or packaging and was construed by the Supreme Court not to preempt express preempt or other express warranty claims that appeared on a product label because the tort claim itself wasn't a requirement for labeling or packaging. Our statute doesn't have that limitation. It's not imposed under state law. It's not for something in particular. It is unqualified and remarkably broad. Any disclosure requirements of any state law. Judge Ambrose, you had a second question. Didn't your brief primarily focus on the first argument, I thought, was that the Pennsylvania should not be making concurrent enforcement actions. And the second one is the preemption. And today you're focusing on preemption. I take it that maybe you would have reversed it. Your Honor, we did our opening brief, I think, in the order that this court certified the interlocutory questions. We maintain the preclusion argument. I would be happy to address that. My question also that kind of we'll get you back. Thank you so much. Thank you, Your Honor. I appreciate your time. Mr. Hopkirk. May it please the court. My name is Howard Hopkirk. I'm a senior deputy attorney general with the Pennsylvania Office of Attorney General. I represent the appellee, the Commonwealth of Pennsylvania. I will be using ten minutes of the appellee's time. Along with me at the end of the table is Christopher Diehl. He represents an amicus, the Consumer Financial Protection Bureau. The court has granted the Bureau five minutes of our time to argue in support of Pennsylvania on the question of whether the Consumer Financial Protection Act prohibits states like Pennsylvania from filing concurrent actions where the Bureau has already filed a lawsuit under the Act. One question, Mr. Hopkirk. Aren't most of your allegations relating to the failure of disclosures? I'm sorry? Aren't most of the allegations in the Commonwealth complaint relating to the failure of disclosures? I think the allegations center on the misrepresentations of Navient, particularly in the context of call centers and people calling. The question was what they relate to. You're answering it in terms of what they center on. So respond to the question the way it was asked. Do they relate to non-disclosures? Maybe the argument is so the way the statute is worded it doesn't cover what it relates to. I mean, you can define almost anything as a non-disclosure. Our position is that to the extent there are allegations about non-disclosure, they piggyback on top of the claims of misrepresentation under the Consumer Protection Law. And so you can have a misrepresentation, and then something which would have just been a disclosure issue is compounded by Navient giving misinformation about something which otherwise might be preempted as a disclosure issue. So to give misinformation, or going to Judge Porter's question, can a non-disclosure result in conveying misinformation by a material omission? Can material omission, in other words, translate what was a non-disclosure into something that is affirmatively misleading? And if it does, does that get to the language of the statute in terms of disclosures being preempted? When you say the language of the statute, you're talking about 1098G? Right, yeah. Well, we think that once you have the misleading behavior as a factual matter, not part of the essential claim, but the fact that a non-disclosure was made can be a factor as far as damages. So would a failure to, or would a material omission, would that be behavior? By not doing an act, it's almost like a metaphysical turn question, but can not doing an act result in the act of a material omission? So I think in certain contexts that just an omission of a disclosure would be covered by the disclosure language of 1098G. But our position is that the misleading misrepresentation under a general statute, under Pennsylvania State authority, is something that can be made exacerbated by, once the barn doors open, then you have non-disclosures or misinformation on top of that, which makes the grievance worse. And the grievance now is already outside the 1098G because of the misrepresentation. Let me just pick up on this because this material omission point, your opposing counsel says, 1098G actually does preempt all material omission state law claims. Let me ask you, do you agree with that or do you disagree with that? I think I disagree with that. Okay, why? Because you have situations which are outside of the realm of disclosure as intended under the HEA and they are coupled. But it says all state law requirements. So let me just give you this example. Let's just say that piece of information A and piece of information B are given. And under state law, once you give A and B, it's a real problem if you don't give C, right? Because if you tell person A and you tell person B, then it's a material omission if you don't tell them C. And all of a sudden, you want to bring a claim because a servicer told A and B but didn't tell C. Isn't that state law really a disclosure requirement for C? It might be a conditional disclosure requirement. You don't have to tell C in the abstract to everyone all the time. But you have to tell C once you go down the road of telling them A and B. And so it might be a conditional disclosure requirement. But isn't it still a disclosure requirement? So I think in the abstract, maybe you could have situations like that. But I think if you look at our complaint and what we're alleging, we're talking about primarily people calling into call centers. And voluntarily, Naviant is providing information to those callers, which there might not have been a problem before. But by doing that, now they're in a different category from just a false misrepresentation. Elaborate on that. What exactly do you mean by that? Give me an example, a more specific example. So if, for example, in paragraph 108 of our complaint, we allege if you're experiencing that the defendant's website provided this information, if you're experiencing problems making your loans payments, please contact us. Our representative can help you by identifying options and solutions so you can make the right decision for your situation. We can help you find an option that fits your budget, simplifies payment, and minimizes your total interest cost. That's, in our position, that's a different category from just a nondisclosure. They are voluntarily making statements to mislead. What's misleading about what you just read? Well, they're making the customer think that if they call, they can trust them and they'll solve their problems. That by itself might not, if they followed through with that, but people are calling and they're being shepherded into forbearance programs and not even being told about IDR. And to say that, well, five months ago we sent you a form that at the bottom it said, it told you about IDR, I don't think that's sufficient and that doesn't take away from when you're in a phone call and you're being told this is your best option and not being told about the other options. So that, you're saying, would just be a misrepresentation or misleading? Yes. And it's not really so much a disclosure, but something that is outside the preemption for disclosures. Right. And also I would refer to page 49 and 50 in our brief where we take snippets from the complaint where they're clearly talking about misrepresentations and not disclosures. And another thing, the Commonwealth is not asking as relief that certain disclosures be required. They just want redress for this misleading behavior on the part of Naviant. It doesn't have to be. Let me just push back a little. It doesn't have to be affirmatively misleading in the sense that maybe the example you gave is if a call center says this is your best option, maybe that's affirmatively misleading, but not you have the option of forbearance full stop. There might be an omission on that, that they have other options as well, but if the suit is for that affirmative message. I mean, I think it's more than just not giving the option, saying, oh, you have this other option, you make the choice. They're saying this is the best option for you, for forbearance, so this is the best option is not a material omission. That is affirmative statement. It may be a misrepresentation. It may not be, but it's an affirmative statement. There's no disclosure requirement in place. But what if there isn't that sort of steering into this is your best option, just tell all your options at the call center. Isn't that foreclosed or preempted? So you're going to have to repeat that? If at the call center, if they only talk about one or two options or one forbearance, but don't go through the others, wouldn't it be a, I mean, isn't that kind of a disclosure requirement saying when you call into the call center, we would have to under state law tell you all your options instead of just focusing on one? But by voluntarily having the people work at the call center and give information that isn't required by the disclosure, that that takes you out of the category of 1098G and puts you squarely under state law under the consumer protection law. And I don't want to use all. I mean, I'll answer whatever questions you have. But Mr. Deal wants to speak also. We're not taxing his time against your time. So go get his full time. OK. Mr. Deal, I think that's your lead in. Thank you, Your Honor. May it please the Court, Christopher Deal for the Consumer Financial Protection Bureau. In 12 U.S.C. 5552, Congress empowered the states to enforce the Consumer Financial Protection Act. Congress set up clear rules about when and how a state can enforce the act. And Congress made sure that the Bureau would have notice and an opportunity to intervene when a state files suit. But Congress chose not to include a provision to stop a state from bringing a suit that is parallel to an existing Bureau action. That's not because Congress has never considered the issue. When Congress wants to bar parallel claims, it knows how to do it. Congress has done so at least a dozen times. And indeed, the Consumer Financial Protection Act itself has another section with just that kind of restriction. Section 1097 of the act, which is codified at 12 U.S.C. 5538, empowers states to enforce certain mortgage rules. But it says that a state can't institute an action with claims that are parallel to a pending action being brought by the Bureau or the Federal Trade Commission. Congress decided not to include that kind of restriction on parallel suits. Clearly an open path for some concurrent actions. And one of the things we're wrestling with is when does something relate primarily to a disclosure and when does it relate to some type of misrepresentation? What was on Congress's mind when it first, or to the extent you know, when it first enacted the HCA 5552? In other words, was it that all 50 states have consumer protection laws? We don't want to intrude on that. There may be something that we haven't covered. Let them deal with it. We'll just make sure that we deal with the proper disclosures. Is that it? Well, I think that the general legislative history here suggests that what Congress was concerned about was a, you know, a situation preceding the Great Recession where the federal consumer financial laws weren't being enforced sufficiently, as Congress saw it. And they wanted to empower states to enforce those laws as well, to ensure that there was adequate enforcement and, frankly, to give the states who are, you know, potentially closer to the people, an opportunity to make sure that problems like in the mortgage market were caught early as opposed to too late. So I think that that's the general goal of Section 5552. There's a quote from the. So let me just ask this. I mean, so if I understand your argument, you're saying that the plain language of the statute on the front end permits both the federal agency to engage in suit and states to engage in suit. But should we also look at the back end and say, well, what happens if they both win? Is there a bar to double recovery? You know, is there a bar to different sorts of relief or is that just not today's problem? Well, I think first, it's not today's problem. You know, we're here on interlocutory appeal of a motion to dismiss. And so, you know, we don't have a situation where the bureau's already obtained a judgment that could potentially have some sort of claim or issue preclusive effect on the states. And I think it's important to separate out these questions about is there a prohibition that applies across the board that prevents states from coming in? And then what happens if you have already have a bureau judgment and then a state judgment? And what about the notion of it's one thing to say two entities can bring suit, but then sometimes courts want to prevent duplicative litigation. They want to do all these other things. So they say, OK, we'll have, you know, I'm not saying the first filed rule applies here or anything like that. But there's all these doctrines. There's abstention doctrines. There's all these doctrines that say, look, you know, So, I mean, you may be right that it's not today's problem. But just by way of forecasting, you know, what happens when a federal agency is bringing basically the same suit as a state for basically the same grievances, seeking basically the same relief in different actions is the thought that, oh, let them both go ahead and we'll just kind of see where the chips fall or should something happen after that? It may not be today's problem. But why don't you prognosticate? Yes, your honor. So I think that the as I think you're suggesting there are usually asking a government lawyer to prognosticate is not a good thing. Oh, I'll take the base of former government lawyer. So I guess what I would say is that, you know, as we explain in our brief, the sort of traditional judicial management tools empower the district courts to ensure that you don't have wasteful and duplicative discovery. You know, the cases can be consolidated. I mean, in this case, the cases are proceeding down parallel tracks before the same district court judge. So I don't think that we have a particular risk here of that kind of problem. And I would note that the intervention provision allows the bureau to get involved in order to facilitate that kind of consolidation to and to make sure that, you know, that Congress's judgment, that states should be able to vindicate their own interests in the way that they see fit can function and proceed, while at the same time allowing, you know, avoiding any kind of wasteful duplicative action. And I think that there are sort of general rules against, you know, duplicative restitution or things like that that could be dealt with down the line that you could apply as appropriate. I would want to note that I think in their in their brief, Navient suggests that the bureau agrees that the Navajo Nation decision was correctly decided. We don't think that that's an issue here. We haven't agreed with it. And we know that there's a general rule that, you know, the federal government and the states are separate sovereigns and aren't generally in privity with one another. So if the court has no further questions, we'd ask you to affirm that Pennsylvania could bring an action that is parallel to the bureau's existence. Thank you. Mr. Chomsky, one of the notations by Mr. Hopker was about the website. If Navient makes representations on its website that are not required by Department of Education disclosure requirements and it promises to help borrowers and keep them informed. And it turns out that people perceive that they are misled. Is that a disclosure issue or a misrepresentation issue? Let me answer that two different ways, Your Honor, if I could. The first thing I would say is that is and I don't mean to take issue with your question, but that is not a fair representation of what was said on the website. In contrast to the statements that you can assume for the moment, not conceding anything that is a hypothetical. But I would take the position in that case that it is still state law enforcing a disclosure requirement. It is the operation of state law that is making that commitment enforceable that if it's a promise, if we want to hypothetically call it a promise or a commitment. Does disclosure morph into misrepresentation or misleading? Well, I think what I would say, if I could tackle this from a different angle, is there were a couple of things that Mr. Hopker said where I actually think that we're in agreement. So, for instance, if somebody called up Navient and a Navient call representative said to them, your best option is forbearance as opposed to IDR. And that's been the claim in a lot of cases. Sorry to interrupt you. That has not been pled. There is no allegation that anybody at Navient ever said to a borrower, your best option is forbearance. But my hypothetical is if that actually were pled, if that actually were proven, and if the state could show that that was not, in fact, the best option for a borrower, we would not take the position that it is preempted. It would be done in a more subtle way. You call up and you're delinquent and they say, I'll send you the forbearance papers, without giving them the information pertaining to IDR. So in a fairly short conversation, because these are call centers and people are getting a lot of calls, and they have, you know, they need to move on to the next one. Why could not a state allege in that context that saying, I'll send you the forbearance papers, but not tell you about IDR, or not even in effect present that option, why could that not be construed as a misrepresentation? Well, Your Honor, I think it really depends on what the question that the borrower asked Navient was. If the question was. The question is, it usually starts, I'm getting calls that I'm delinquent, and I want to deal with this. I understand there's a program. I can call you and get some help here. I'll send you the forbearance papers in my example. And you're not told about IDR when it turns out that IDR may be more helpful to that particular borrower. Your Honor, I think that would present a close question. I would continue to maintain that at the point where the state would impose liability on Navient for not disclosing the availability of IDR, then that is state law effectively imposing a disclosure requirement. But I also want to say that hypothetical really bears little resemblance to what happens in the real world. Again, a typical conversation between a borrower and a call center representative is similar to your setup, which is I'm getting phone calls about being delinquent. I'm not going to be able to make my payment this month. Is there something that you can do to help me? And the call center representative says, I can offer you a forbearance. And I want to emphasize that there's nothing wrong with that statement. In fact, it is a statement that federal regulations specifically encourage. If you look, for instance, at Ed's regulation at 34. What if IDR is the better option for that particular borrower? If a borrower said, what is my best option? And the call center representative said, forbearance, I will send you the papers. And it were proven that forbearance was not the best option. We think that would be actionable. But I do want to say, if I could, just very, very briefly, 34 CFR 682.211, subsection A. The secretary encourages a lender to grant forbearance for the benefit of a borrower or endorser in order to prevent the borrower or endorser from defaulting. But what if IDR is the better, significantly better option for that particular individual? Well, I think that's fact specific. And it depends on whether or not. My example is, assume the facts in this case, that IDR is, for this particular borrower, is a significantly better option. I think I would still take the position, Your Honor, that in prohibiting or preempting the application or enforcement of any disclosure requirements of any state law, if there's not a materially false representation, a provably false representation that can be tested by evidence in a courtroom, and the state is imposing liability anyway, then that is a prohibited disclosure requirement. I think that the question. So what you're saying is state law may ordinarily prevent this sort of conversation of saying, here's forbearance, without also talking about the other options, IDR or whatever. State law may ordinarily prohibit that. That may ordinarily be actionable under state law. And what you're saying is, aha, it's not actionable anymore because we've got 1098G. And because we've got 1098G, that allows us not to tell you about IDR. That allows us to just follow this one reg, nothing more, and tell you only about forbearance because at least you don't have a state law remedy against this. What you have in the federal sphere is different. What you have in the state law sphere, don't have it. I have three responses to that, if I could, Your Honor. The first is it's not an aha, we can get away with this. The reality, as I said before, is this is disclosed to borrowers when the loan is taken out, before it enters repayment on every bill or statement, and again in writing after a borrower enters forbearance. No allegation that Navient has failed to make those disclosures repeatedly. We do it, and we're proud of it. The second thing that I want to say about it is it's not an aha moment. There is a good reason why Congress wrote 1098G the way it did. It's because when borrowers apply for loans, they're high school students that reside in all 50 states, but might want to go to college in a different one of the 50 states. It's because when they go to that college, they might transfer even while they're in school, and it's because after they leave college, they might move to another state entirely, in fact, several times, right, because these loans can be paid back over a period of 30 years. If that were the reason, then it would prevent all state law claims, including those for affirmative misrepresentation, because heaven forbid we have claims that involve the laws of all 50 states. It would be broader if that were the animating purpose. I think that Congress certainly could have written a broader preemption clause than it did. I think this one is pretty darn broad. It is any disclosure requirements of any state law, and it's to avoid a circumstance in which a single borrower is potentially subject to the laws of myriad different states, depending on where they took out the loan, depending on where they went to school, depending on where they happen to live at the time. Usually you're thinking of that as applying to the types of forms that you have. State law, federal law sets out the forms and the types of disclosures that must take place on those forms. We're talking about the next step. It isn't a form. It's somebody calling, in effect wanting advice because they're calling into a call center. They're really concerned, and they're being sent something. It isn't so much a disclosure. They're just being sent something very quickly, and they think in the end that's the only option because they really don't know the law here, and that can rise in certain circumstances to the level of being a misrepresentation. And by the way that the context is done. That seems to be what Nelson is telling us is the type of thing that states can bring. Well, respectfully, I don't think that Nelson took the line that this applies only to standardized forms. Nelson actually considered and rejected that because if you look at 20 U.S.C. 1083, it details disclosures wholly apart from the forms at all throughout the life cycle of the loan, as I was saying a moment ago. So that's why my question to you was what is a disclosure, and what is a misrepresentation? When does something morph into the other? Well, if I could qualify that, again, it's the difference between, on one hand, a disclosure or omission, which is a form of a disclosure, and an affirmative misrepresentation, telling somebody, for instance, that forbearance is the best option when it isn't. I would concede, and there are, let me be clear about this, there are a couple of allegations in the complaint, I think they will be proven false if they proceed, that borrowers who are eligible for IDR were told that forbearance was the only option when it allegedly was not. That, we would concede, is not preempted if, in fact, the borrower was eligible for IDR. Those are affirmative misrepresentations. But when you have a customer who doesn't know what the options really are, and the person says, oh, I got you, I'll send you a forbearance agreement, sign it, send it back, boom. I mean, Judge. You're telling me that can't be a misrepresentation? I think what I would say about that, Your Honor, is that has to be understood in the context of a federal disclosure regime, which requires IDR to be disclosed to borrowers time and time again. That seems to be far narrower than the way I perceive Nelson. Nelson's unpublished, so how much is helpful, but I'm wondering how much we should rely upon Nelson. Sorry, I thought the Nelson decision is a published opinion of the Seventh Circuit. Yeah, 928F3rd. And Nelson didn't deal with material omissions, did it? It might somewhere. I didn't see it. No, and it focused on the website. And if I could make an important point about that quickly. Nelson was decided in a very different posture than this case. Nelson was reversing a district court's granting of a motion to dismiss. And so it was important in the context of that opinion for the Nelson court to explain what the district court got wrong. That is, what claims the Nelson court thought could proceed that the district court had erroneously gotten rid of. And it identified the unique and, I think, distinguishable website claims here. This is the flip side of that, right? We have a situation in which, as I said before, there are several claims here which unquestionably are nondisclosure requirements. I know the website, for instance, is a tougher question. But, as I said before, like 177B, 184B, 184C. And so if you guys, if the court is going to do, sorry. If the court is going to do. You guys work for us. Thank you, Your Honor. It's the American Jersey. Youse guys. The plural is youse. If the court is going to do, if youse guys are going to do what the Nelson court did, we would respectfully ask you to give Mariani the same sort of guidance. Tell him what he got wrong and identify the claims that clearly are nondisclosure requirements. And perhaps we can duke it out in front of Judge Mariani over whether or not the additional claims, in light of where you draw the line between disclosures and omissions on the one hand and affirmative misrepresentations on the other, should be drawn. I know I'm like gobs over time here. I would like to just very. We keep asking you questions. Thank you. I appreciate that. And I'm trying to be as helpful as I can to the court. I'd like to just, if I could very briefly address the preclusion claim under the Dodd-Frank Act. I have just a couple of very quick things that I want to say. I'm going to try and do it in like one minute maximum. Impossible. Let's see if you can do it. Let me do a couple of things. Judge Ambrose, you'd asked Mr. Geale about the relationship between 5552A and the preemption issue, whether the states could proceed under ordinary state law. I think it's important for the court to recognize these are actually completely different things. The Dodd-Frank Act isn't an authorization for states to pursue state law claims. It is, by its terms, an authorization for states to enforce federal law. So the question is not about the relationship between Dodd-Frank and state law claims. It's about states acting as enforcers of federal law. Judge Phipps, I thought you really nailed, hit the nail on the head. You said it may not be today's problem that there's a race judicata issue in this case, but I actually think it shows exactly what the problem is with the copycat claims that the state or the Commonwealth is pursuing here. We typically presume that Congress intends to accomplish something with legislation. I won my bet, by the way. But it can't accomplish anything in this context, because at the end of the day, the CFPB's case is going to be resolved years before the Commonwealth's case is. We haven't even started discovery in Pennsylvania's action yet, and it is going to be race judicata. I know Mr. Deal said the state and the federal government are separate sovereigns. That's true. But they are acting in a parens patrie capacity where they are representing exactly the same borrowers on exactly the same claims nationwide. And so recognizing that problem, Mr. Deal says, well, you know, there are a variety of mechanisms that can be used to avoid this waste and duplication. The one that he offered up, one that was also offered up by Judge Mariani, is the possibility of staying the Commonwealth's litigation until the Bureau's litigation is done. Consolidating. Why not consolidate them? Well, I don't think at this point it's practical to consolidate them. And in fact, the Commonwealth concedes explicitly in its brief that consolidation isn't an appropriate option. But at the point where we're talking about a duplicative lawsuit that has to be stayed, it is going to be subject to race judicata. The question becomes, why on earth would Congress have wanted this? And in our view, there are a couple of things in the statute. We laid it out in our briefs that cast doubt on that. The notice and coordination provision, the intervention right that the Bureau can't exercise because of the rule against claim splitting. And so I think our view is, if we're talking about a lawsuit that can't accomplish anything that the Bureau's antecedent lawsuit can, where you have the sponsor of the statute, Senator Carper, in the legislative history that we quoted in our brief saying, this isn't intended for states to pile on to a Bureau action. It's to ensure that there's a regulator who can act when the federal government is asleep at the switch. But Senator Carper also has other statements. We've got those. Fair enough. Let me know when you finish your one minute argument. Well, I apologize for affirmatively misleading the Court of Appendage four times, and greatly appreciate your indulgence this morning. Thank you so much, Your Honors. Thank you. Thank you. Can we get a transcript of the argument? If you'll check with Mr. Lombardo, he can explain to you the cost of that, the mechanism for doing the transcript. Of course. Thank you so much. You're very welcome.